**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANCED ORTHOPEDICS AND SPORTS MEDICINE INSTITUTE, P.C.,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON HEATLHCARE SERVICES, INC. *et al.*,<br><br>Defendants. | Civil Action No. 21-12397 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Horizon Healthcare Services, Inc. ("Horizon") and Highmark, Inc.'s ("Highmark") (collectively, "Defendants") Motions to Dismiss Plaintiff Advanced Orthopedics and Sports Medicine Institute, P.C.'s ("Advanced Orthopedics") Complaint. (ECF Nos. 15, 16.) Advanced Orthopedics opposed, requesting leave to amend in the alternative (ECF No. 20), and Defendants replied (ECF Nos. 23, 24). The Court has carefully considered the parties' arguments and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motions to Dismiss.

**I.   BACKGROUND**

This action arises out of a May 2018 back surgery that Advanced Orthopedics performed on L.S., an individual with an employee health benefits plan (the "Plan") through her employer, Acrow. (Compl. ¶¶ 7-8, 17-18, ECF No. 1.) Collectively, Horizon and Highmark are members of the Blue Cross and Blue Shield Association and participate in the "BlueCard Program," which

processes out-of-state claims under the Plan. (*Id.* ¶¶ 6, 8-9.) Simply put, Highmark administers the Plan (*id.* ¶ 8) and Horizon acts as a claim processor on behalf of Highmark to make the actual payments (*see id.* ¶ 26). Horizon also establishes a series of out-of-network pricing methodologies and related policies that Highmark references when deciding claim reimbursement amounts. (*Id.* ¶¶ 28, 32-38.) One methodology is a database controlled by an independent non-profit company, FAIR Health. (*Id.* ¶ 32.) Under the Plan, out-of-network providers are subject to the "Plan Allowance," which differs based on the terms of the specific employee plan and the patient's employer. (*Id.* ¶ 27.)

In September 2018, Advanced Orthopedics submitted bills totaling over $348,000 to Horizon for L.S.'s back surgery. (*Id.* ¶¶ 8-9, 26.) Shortly before it performed the surgery, Advanced Orthopedics claims it "received prior authorization from Horizon" to proceed. (*Id.* ¶ 18.) Notably, Advanced Orthopedics' surgeon was out-of-network under the Plan. (*Id.* ¶ 25.) According to Advanced Orthopedics, L.S. was required to use its services because there were no qualified in-network orthopedic surgeons to treat L.S. (*Id.*) In total, Horizon paid Advanced Orthopedics less than $6,000 for the completed surgery at the direction of Highmark. (*Id.* ¶ 26.) Unsatisfied with the reimbursement amount, Advanced Orthopedics appealed the payment to Defendants through five separate letters, protesting that under the Plan Defendants owed it additional benefits. (*Id.* ¶ 41.) The basis for this suit is the deficit between the cost of the surgery and the total amount paid by Defendants to Advanced Orthopedics. (*Id.* ¶ 26.)

Advanced Orthopedics avers that L.S. is a "beneficiary" of the Plan and has standing to bring this action, which she subsequently assigned to Advanced Orthopedics through a series of executed documents. (*Id.* ¶¶ 13-16 (citing 29 U.S.C. § 1002(8), § 1132(a)(1)(B)).) At issue before the Court are the terms of L.S.'s Plan and whether Defendants were obligated to reimburse more

than the amount they covered. (*See id.* ¶¶ 27-28.) Advanced Orthopedics alleges that Defendants "very plainly should have used FAIR Health," the "gold standard in determining out-of-network pricing for services rendered to patients insured through benefit plans." (*Id.* ¶¶ 36-37.) For their part, Defendants argue that they were not obligated to use FAIR Health's database and further that they paid all that was obligated under the Plan for out-of-network surgery. (*Id.* ¶¶ 26, 42; Horizon's Moving Br. 16-17, ECF No. 16-1; Highmark's Moving Br. 9-12, ECF No. 15-1.) Advanced Orthopedics brings this ERISA action (Employee Retirement Income Security Act of 1974), under 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 44-46.)

## II.   LEGAL STANDARD

To state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)[1]. Rule 8 "does not require detailed factual allegations," but pleadings merely offering labels, legal conclusions, or "naked assertions devoid of further factual enhancement" do not state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and alterations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The plaintiff's claim must be facially plausible to survive a motion to dismiss, such that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The pleadings must rise beyond mere "labels and conclusions, and a formulaic recitation of the elements of a

---

[1] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

## III.   DISCUSSION

ERISA's § 502(a) is "a comprehensive civil enforcement scheme" through which members of employee benefit plans can pursue, among other things, claims for the underpayment of benefits. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). At bottom, Advanced Orthopedics argues that Defendants "violated obligations set forth in the Plan" by underpaying benefits, acting in a "arbitrary, capricious, and manifestly mistaken" manner. (*See* Compl. ¶¶ 44-46.) Both Highmark and Horizon counter that they acted in accordance with the terms of the Plan and Advanced Orthopedics' general grievance of being underpaid fails as a matter of law. (*See generally* Highmark's Moving Br.; Horizon's Moving Br.) In addition, Horizon separately raises a threshold argument that it is not a proper party under ERISA § 502(a)(1)(B) because it's merely the host with no discretionary authority of or control over the Plan. (Horizon's Moving Br. 9-14.) The Court starts with addressing Horizon's claim that it is not a proper defendant and then addresses whether Advanced Orthopedics adequately alleged that Defendants violated the Plan.[2]

---

[2] Highmark alludes to two arguments in footnotes: Advanced Orthopedics failed to properly exhaust its remedies and it also lacks standing to file this suit. (*See* Highmark's Moving Br. 1 n.1, 6 n.7.) As an initial matter, arguments mentioned in footnotes are not sufficiently raised. *Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000). In any event, both arguments fail at this stage. As to standing, a patient may assign payment of insurance benefits to a healthcare provider under ERISA § 502(a). *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *4 (D.N.J. Oct. 31, 2018). Notably, Defendants do not allege that the Plan contained any anti-assignment provisions (*see* Horizon's Moving Br. 14 n.5) and thus Advanced Orthopedics adequately pleads assignment in its Complaint (*see* Compl. ¶¶ 14-16). As for exhaustion, the burden to prove a failure to exhaust resides with Defendants. *Venusti v. Horizon Blue Cross & Blue Shield of N.J.*, No. 20-714, 2021 WL 2310095, at *3 (D.N.J. June 7, 2021). Presently, the Court finds no colorable exhaustion issue based on the record before it.

4

A.      **Horizon is Not a Proper Defendant to This Suit.**

Horizon argues that it is not a proper party under ERISA § 502(a)(1)(B) and, therefore, Advanced Orthopedics' claim against it must be dismissed. (Horizon's Moving Br. 9-14.) ERISA § 502(d)(2) provides that "[a]ny money judgment under [ERISA] against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2). Based on the express statutory language, district courts routinely hold that only "the plan itself (or plan administrators in their official capacities only)" constitutes a proper defendant in a § 502(a)(1)(B) action. *Graden v. Conexant Systems Inc.*, 496 F.3d 291, 301 (3d Cir. 2007). Under this provision, the U.S. Court of Appeals for the Third Circuit defines "plan administrators" as those entities that "[e]xercis[e] control over the administration of benefits." *Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 558 (3d Cir. 2009). An entity's "discretion to interpret the terms of the policy and to determine [coverage] eligibility" are primary considerations of whether it "exercise[s] control over the administration of benefits." *Tomczak v. Stripes, LLC*, No. 19-19524, 2021 WL 567967, at *4 (D.N.J. Feb. 12, 2021).

Here, Horizon avers that it was neither the Plan nor the Plan administrator.[3] (Horizon's Moving Br. 11.) Horizon was also not L.S.'s employer or an entity with any discretion over or control of the Plan. (*Id.*) Instead, Horizon claims it acted merely as the "Host Blue" that made pricing methodologies available to Highmark for out-of-area and out-of-network claims. (*Id.*) But as to these pricing methodologies, Horizon stresses that Highmark had sole discretion in deciding

---

[3] Under 29 U.S.C. § 1002(16), the Plan "administrator" is a person "specifically so designated by the terms of the instrument under which the plan is operated" or, if none is designated, the "plan sponsor," or, if no sponsor is identified, a person designated by the Secretary of Labor. *See* 29 U.S.C. § 1002(16)(A). A "plan sponsor" is the employer or employee organization that maintains the plan. 29 U.S.C. § 1002(16)(B).

5

which methodology to use and the amount of benefits owed under the Plan. (*See id.*) Horizon also processed the claims at the direction of the "Host Plan," here Highmark, but otherwise "the Plan does not vest Horizon with any discretion over the Plan or its assets." (*Id.* at 5, 14.) Without any discretionary control over administration of the Plan, Horizon maintains, it is not liable under ERISA §§ 502(a)(1) and (d)(2). (*Id.* at 9-13 (citing, among others, *Atl. Neurosurgical Specialists, PA v. Anthem Blue Cross and Blue Shield*, No. 20-10415, 2021 WL 4148149 (D.N.J. Sep. 10, 2021)).)

In factually similar cases, courts in this District and elsewhere have found "that Blue Cross Blue Shield's 'hosts' do not constitute proper defendants under § 502(a)(1)(B)." *Atl. Neurosurgical Specialists*, 2021 WL 4148149, at *4 (citing *Est. of Kenyon v. L&M Healthcare Health Reimbursement Acct.*, 404 F. Supp. 3d 627 (D. Conn. 2019)). Courts look to what discretion, if any, the Plan vests in a "host." *Est. of Kenyon*, 404 F. Supp. 3d at 633. Even claim administrators with some discretion have been excluded as appropriate defendants under § 502(a)(1)(B) absent control over appeals by members. *Id.* The "defining feature" of a proper defendant under § 1132(a)(1)(B) is "[e]xercising control over the administration of benefits," with a focus on the entity's role in that determination. *Evans*, 311 F. App'x at 558-99.

Advanced Orthopedics' Complaint fails to establish that Horizon is a proper party to this suit. Accepting all *factual* allegations in its Complaint as true, it establishes that Horizon (1) set the pricing tables that Highmark could discretionarily use as a reference in determining the amount of benefits it will pay; and (2) administratively processed and paid L.S.'s claim at the direction of Highmark. (Compl. ¶¶ 9, 26-35, 37.) Advanced Orthopedics' remaining claims regarding Horizon constitute conclusory statements that fail to meet the pleading standards. *See Twombly*, 550 U.S. at 555. For example, Advanced Orthopedics' assertion that it "received prior authorization from

Horizon under authorization number REQ-3145500" in May 2018 is foundationless. (Compl. ¶ 18.) Absent from the Complaint are any details involving who solicited the prior authorization, who accepted the authorization, the medium in which the authorization was received, and the specific provisions under the Plan that govern prior authorization. (*See generally* Compl.) Similarly, the Complaint's allegations that Highmark "delegated responsibility" to Horizon to make benefit determinations (*id.* ¶ 9) or that Horizon "exercised control over the administration of benefits" (Pl.'s Opp'n Br. 15, ECF No. 20), also lack factual support. *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 431 F. Supp. 3d 518, 523 (D.N.J. 2019) (the court will not accept "unsupported conclusory statements" at the pleading stage). To be sure, courts routinely reject similar conclusory statements in § 502(a) cases for underpayment of benefits. *See, e.g.*, *Atl. Neurosurgical Specialists*, 2021 WL 4148149, at *5 (finding insufficient plaintiff's "assert[ion] without any particularized allegations that Horizon 'exercised discretionary authority or discretionary responsibility in the administration of the Plan'"). Noticeably absent from the Complaint is reference to the Plan's mentioning of Horizon at all, let alone its delegation of authority or control to Horizon.[4] Indeed, Advanced Orthopedics seems to undermine its own argument by admitting that Horizon paid the $5,487 reimbursement to it "*on behalf of* Highmark and/or the Plan." (Compl. ¶ 26 (emphasis added).)

Because Advanced Orthopedics failed to demonstrate why Horizon is a "proper" party under § 502(a)(1)(B), the Court will dismiss the Complaint against it. *See Pro. Orthopedic Assocs.,*

---

[4] Although Advanced Orthopedics failed to attach a copy of the Plan to its Complaint, Highmark did in its briefing. (*See generally* Compl.; Highmark's Moving Br., Ex. 1 ("Employee Benefits Plan"), ECF No. 15-3.) The Plan is both integral to Advanced Orthopedics' claims and referenced extensively throughout the Complaint, and as such the Court may consider it on a motion to dismiss. *Kayal Orthopaedic Ctr., P.C. v. Empire Blue Cross Blue Shield*, No. 16-9059, 2017 WL 4179813, at *3 (D.N.J. Sept. 21, 2017).

7

*PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *11 (D.N.J. July 15, 2015) ("There are no allegations in the Complaint that plausibly allow for an inference that [defendant] had responsibility for, or controlled, the benefits determination as it relates to [plaintiff's] [ERISA] claims."); *Stripes*, 2021 WL 567967, at *5 (finding defendant was not a "proper party" because it had neither "the ultimate power to decide disputed claims" under the plaintiff's insurance plan nor the "responsibility [of] administering benefits under the plan" (internal citations omitted)).

### B. Advanced Orthopedics' Complaint Fails to Specify a Plan Violation.

The Court next turns to whether Highmark violated the Plan. The core of Advanced Orthopedics' Complaint avers Defendants violated "the clear terms of the Plan" in underpaying L.S.'s benefits. (Compl. ¶ 26.) ERISA claims under § 502(a)(1)(B), like most contractual disputes, hinge on the express terms of the Plan. *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *3 (D.N.J. Oct. 31, 2018) ("Under Section 502(a), a 'participant or beneficiary' has standing to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" (quoting *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004))). Accordingly, the Court begins with interpreting the Plan itself.

The parties agree on certain provisions in the Plan. For one, Advanced Orthopedics was out-of-network and therefore subject to the "Plan Allowance" provision, which provides that the maximum Plan allowance "shall be based on prices received from the local licensees of the Blue Cross Blue Shield Association." (Compl. ¶¶ 25-27; Highmark's Moving Br. 5.) Further, Highmark can select from several of Horizon's pricing methodologies for out-of-network reimbursements, depending on the benefits plan at issue and the provider. (Compl. ¶ 32; Highmark's Moving Br. 7.)

8

There is also no dispute that Highmark did not use the FAIR Health index in reimbursing L.S.'s claim. (Compl. ¶ 39; Highmark's Moving Br. 11.) The common ground ends there.

What remains disputed is whether the Plan obligated Highmark to pay more in benefits than it did. (*Id.*; Compl. ¶ 39.) For Advanced Orthopedics' part, its Complaint directs us away from the Plan itself to Horizon's website, which it claims illustrates two primary methodologies for setting out-of-network reimbursement rates depending on the Plan. (*Id.* ¶ 32.) Advanced Orthopedics urges that FAIR Health is the "gold standard" and should have been used to reimburse L.S.'s surgery. (*Id.* ¶¶ 32, 36-37.) Defendants counter that the Complaint fails to specify what provision in the Plan entitles L.S. to receive reimbursements based on FAIR Health's index. (Highmark's Moving Br. 11). Instead, Highmark argues that FAIR Health is but one database it *can* use in its discretion, but the Complaint points to "nothing in the Plan that requires application of that methodology or use of that particular database." (*Id.*)

The Court agrees with Highmark. Although reimbursements were "clearly" not based on the FAIR Health model (Compl. ¶¶ 32, 39), the Court strains to identify any Plan provision that obligates Highmark to use this methodology. (*See generally* Employee Benefits Plan). Rather, a plain reading of the Plan itself appears to list multiple pricing mechanisms that *may* be referenced for out-of-network coverage. (*See id.*) Either way, Advanced Orthopedics fails to specify in its Complaint "which actual portions of the plans were violated, when they were violated, or how they were violated." *LeMoine v. Empire Blue Cross Blue Shield*, No 16-6786, 2018 WL 1773498, at *6 (D.N.J. Apr. 12, 2018); *see also Advanced Orthopedics & Sports Med. Inst. ex rel. MS v. Anthem Blue Cross Life & Health Ins. Co.*, No. 20-13243, , 2021 U.S. Dist. LEXIS 200266, at *24-26 (Oct. 18, 2021) (finding no violation of a plan where plaintiff cited provisions of plan listing several pricing methodologies that may be used to calculate out-of-network and out-of-area claims).

Without specifying any specific terms of the Plan that Highmark violated, the "Complaint contains little more than an assertion that [Advanced Orthopedics] is owed more than it was paid for the services it provided." *Complete Foot & Ankle v. Cigna Health & Life Ins. Co.*, No. 17-13742, 2018 WL 2234653, at *2 (D.N.J. May 16, 2018). A general grievance that the benefits paid were unfair is legally insufficient when untethered to any provisions within the Plan. *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *11-12 (D.N.J. Mar. 22, 2018) (collecting ERISA cases where plaintiffs failed to plead specific violation of plan provision in a § 502(a)(1)(B) action). Thus, Advanced Orthopedics' Complaint is dismissed without prejudice.

### IV.  CONCLUSION

For the reasons stated above, the Court grants Defendants' Motions to Dismiss. The Court will enter an Order consistent with this Memorandum Opinion.

*[signature]*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE